[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated December 3, 1997 the plaintiff wife, Kathleen M. Perzanowski commenced this action seeking a dissolution of marriage on the ground of irretrievable breakdown, custody, child support, alimony, property distribution and other relief. The defendant husband, Kevin P. Perzanowski appeared through counsel. Both parties appeared with counsel on May 6 and May 7 and presented oral testimony and exhibits. The court, after hearing and reviewing the evidence finds the following facts.
The wife, whose maiden name was Kathleen M. Sullivan, married the defendant in Manchester, Connecticut on February 14, 1981. She has resided continuously in the state of Connecticut for one year next preceding the date of the filing of this complaint. All statutory stays have expired and this court has jurisdiction. The parties have four minor children born to the plaintiff wife since the date of the marriage, all of whom are issue of the marriage: Dana J. Perzanowski, date of birth 5/19/87; Kyle D. Perzanowski, date of birth 6/13/89; Colton P. Perzanowski, date of birth CT Page 5827 8/21/90 and Sloan M. Perzanowski, date of birth 8/4/92. The court further finds that no minor child or children have been born to the wife since the date of the marriage who are not issue of the marriage. The court further finds that no state or municipal agency is contributing to the support of the parties and/or their children.
The wife is 41 years old and has received a high school diploma. The wife suffers from Lupus, (a skin disease resulting in body sores, bald spots on the head), a congenital condition in her left ear resulting in a loss of hearing. She further complained of backaches at the time of trial with no medical evidence documenting any physical or functional impairment. The wife further claims was the subject of repeated emotional trauma from her husband and alleged physical assaults by her husband in many different incidents that has left her emotionally drained and in fear of her husband. As of the date of the trial however, the wife was not treating for physical or emotional conditions.
The court finds that the wife worked from the time of her graduation of high school until 1986, the birth of the first child, Dana Perzanowski. During the marriage the wife worked at Hartford National Bank as a clerk and further worked as a temporary with Kelly Girls. Her last effort in employment was work as a receptionist at a real estate office. She intended to further her employment prospects by obtaining a real estate agents license which she did not obtain. She indicated that her husband did not want her to obtain a real estate license in that it required her to work hours during the day and to use a motor vehicle her husband used. Upon the birth of the first child the wife did not return to work.
The court further finds that both parties agreed that the wife should not go back to work at the husband's insistence during the births and formative years of the children. Based on her limited education, lack of employment since 1987, and lack of transferrable skills, the court finds that the wife's prospects of employment in the near further are dim. This is further compounded by the fact that she is a primary caretaker of four children, one of whom suffers from psychological problems, the minor child Colton and the oldest child Dana who suffers from dwarfism and its attendant daily psychological challenges.
The husband is 42 years old and is in good health. He dropped out of high school in his junior year and began to work. His job CT Page 5828 history begins at Hartford Dispatch where he worked as a truck driver until approximately 1987. He left Hartford Dispatch to take on a better job at Barrieau Moving Company. While the wife claims that he was terminated from Barrieau for stealing, the court finds that the wife has failed to prove said claim with parenthetically little import to the overall findings of the court. The defendant has consistently worked at Barrieau from August 1987 to the present date as a truck driver. There has been a recent change in status of his employment from an independent contractor/employee to employee which will be discussed further. By the testimony of the parties the court finds that his gross income for 1995 is $70,000.00, 1996 is $65,000.00, 1997 is $62,756.00, and 1998 is $55,000.00. The court finds that the husband's income has decreased due to no fault of his own. The industry in which the husband is employed has undergone substantial changes in the 1990s. According to testimony of the witness subpoenaed by the wife, Norman Castner of Newington, Connecticut, a vice president in the operations department of Barrieau, the company had to substantially increase discounts to corporate customers who make up a bulk of their business, namely Aetna, Cigna and Hartford Insurance. He further testified that the union contracts negotiated by Barrieau and the Truck Driver's Union (the husband being a steward of said union) provide for a cut in pay in wages for its members. In accordance with the agreement worked out with the union, the drivers (including the husband) must hire out workers and pay for the fuel and labor costs in moving furniture and other items of personal property. He further testified that all expenses to move the loads (ie. fuel and labor) have also gone up. He also testified that in the past Barrieau drivers were treated as independent contractors and employees for tax purposes. Said dual status was found to be illegal by the IRS. This procedure has been terminated and the drivers are now treated as employees for labor and tax law purposes. The husband has filed a financial affidavit dated May 5, 1995 showing a weekly income of $1,065.00 per week based upon 1998 income. The 1999 year to date income reflects a weekly gross of $847.00 per week as indicated in the margin of the financial affidavit and as stated by counsel for the husband at trial.
The court finds, based upon the above testimony and his financial affidavit, that the defendant's weekly income for purposes of calculation of child support and/or alimony is $1.065.00 per week. The court further finds as stated above that the wife's income and earning capacity as of the date of the trial is zero dollars per week. The court also finds the husband CT Page 5829 is working to his earning capacity, based upon credible the testimony of Norman Castner and the defendant as to the defendant's attention to his employment and attempt to find work.Miller v. Miller, 181 Conn. 610 (1980).
The testimony of Norman Castner and the defendant also reflects the defendant has increased the area in which he would accept work (ie. area that would require overnight trips), which was different from his work area prior to the union contract negotiations. The court also finds that the husband is working to his earning capacity as of the date of the trial and further finds that the wife cannot work in a meaningful way to obtain income based upon the multiplicy of problems she deals with daily, the majority of which stem from the raising of the four children and attention required by Dana and Sloan. The court further finds based upon the testimony that the wife is and has been the primary caretaker of all of the children who attended to most of the childrens' daily needs. Seymour v. Seymour,180 Conn. 705 (1980).
The parties further stipulated that the plaintiff wife reserved the right to claim an arrearage in child support back to January 8, 1999. A counsel for the parties indicated that that wife's prior attorney Michael Quinn agreed with the husband's attorney Jeffrey Mickelson that the court could refer back to January 8, 1999 for the purpose of determining whether or not any child support arrearage is due and owing to the wife. The parties at the present trial stipulated as follows:
1. The husband has paid 85% of his net disposable income to the wife for support of the minor children and the wife since the date January 8, 1999.
2. Said amount equals the sum of $730.00 per week.
3. If the husband is working to earning capacity from said date to the date of trial, then no arrearage should be found.
4. If the husband is not working to earning capacity since 1/8/98 the court can find an arrearage up to $14,721.00. The parties further agreed to make said argument in light of a potential merger problem.
Based upon the court's analysis of the earning capacity and sincerity in the defendant in seeking work, the court hereby CT Page 5830 finds that no arrearage is owed by the husband to the wife for support since January 8, 1998 through the date of the trial.
In this case the wife has made numerous claims of physical and emotional abuse both pre and post marriage. The court finds it extremely difficult to comprehend how these two individuals could get married based upon their relationship prior to their exchange of vows. The wife contends that she met her husband in 1974 and dated until they were married in Manchester on February 14, 1981 with a short period of separation in between. The wife claimed the following events occurred during their courtship: (1) He threw a suitcase at her because he didn't want her to use the car with the suitcase hitting her face and fracturing a tooth which required bonding, (2) He attempted to push her out of a motor vehicle while dating while the car was approaching a stop light during a heated argument between them, and (3) during a high school function while she was seen speaking to another man, her husband went after the third person due to jealously.
She further related that they split up for five months and then reinstituted their relationship resulting in their residing together for a couple of years prior to their marriage in 1981. She placed conditions on their relationship which was met by her husband, namely that he stay away from his friends and that he do things she'd like to do. Apparently those contingents were met in that the parties married on February 14, 1981 in Manchester, Connecticut.
At the time of their marriage the husband was working at Hartford Dispatch and according to the wife was making "a lot of money." She worked at Connecticut National Bank from 1976 to 1981. The wife then obtained employment at Kelly Services, a 4H Club and as a receptionist for a real estate office for a few years. She stopped working since the birth of Dana by agreement with her husband, ie. he did not want her to work because of the family and the fact that he was making sufficient money as a truck driver to take care of the family needs. He also requested that she not work in the real estate office because of the hours, family dinners and the fact that he did not want her to operate the new family car.
Prior to the birth of Dana, she contended that the husband abused cocaine for a period of one year. However, the wife also agreed that she was a recreational user of cocaine but denied any addiction. Both parties indicated the marriage was fairly CT Page 5831 successful until the birth of Dana. At the time Dana was diagnosed to suffer from dwarfism the husband was in denial and the marriage relationship started to deteriorate. Since the birth of Dana the wife claims that the husband was depressed, dependent upon his family for financial support when injured at work in 1995 and further abusive verbally and physically toward her. She further indicated that the birth of a daughter, Sloan in 1992 also depressed her husband in that he didn't want a girl which was vigorously denied by the husband. The wife also related that the husband built a substantial addition to their home starting after the birth of their son Colton rather than moving into a neighborhood. After the birth of their fourth child the wife claims the husband's depression worsened.
She also related that his ability to deal with the children was inappropriate throughout the marriage. She claimed that he could not discipline and did not discipline the children in any manner which has caused her stress and emotional difficulty in disciplining the children throughout the marriage. The parties separated after the birth of Sloan when the wife relates that the husband came up behind her and put his hand over her mouth and nose from behind and in her opinion he was attempting to asphyxiate the wife when her son Dana came into the room causing the husband to remove his hand when she dropped to the ground.
As a result of this incident the wife felt scared and threatened and thought the husband was a "nut". He moved out for a few months returning only on Sundays to bring money for the family. He moved back into the family residence however, he resided in a trailer in the back of the house for a while and commenced counseling. During this period the wife had filed for a divorce but they reconciled in April of 1992 subject to the following conditions:
1. Should he go to counseling; 2. They sell the house; 3. They get rid of cars parked at the marital property.
While they did go to counseling, they could not agree as to the sale of the house, disciplining of the children, general conduct in front of the children and each other.
The wife relates that the husband spit on her face in 1996, pushed her around in a threatening manner in 1997 and generally intimidated her throughout their married life. The wife further reflected that she only contacted the police once in October of CT Page 5832 1997. In October of 1997 she related an event wherein the husband was urinating in front of the children in the bathroom where she threw water in his face, where he struck her resulting in her decision that the marriage was finally over, resulting in her commencement of the present action on December 3, 1997.
The husband contended that the marriage was "alright — a little rocky when their first child was born". The physical problem (dwarfism) caused him to be depressed and their marriage problems accelerated. The birth of their last child, Sloan caused added problems resulting in the need for larger living quarters spawning additional conflict with his wife concerning the addition versus a move to a condominium or other home as requested by the wife.
While the husband has repeatedly denied the physical altercations described by the wife, he admitted the marriage deteriorated with yelling and screaming and confrontations he claimed was caused by the wife's lack of control and her inability to discuss matters with him. The husband also denied being confrontational with his wife, while he admitted that he was intimidating at times but further denied disparaging the wife in front of the children. The husband also displayed a laissez-faire attitude toward reasonable discipline of the children and Sloan's inappropriate and sometimes bizarre behavior toward his siblings and others.
The court finds based upon the testimony of the husband and wife, that the husband was less than candid with the court concerning his confrontations with the wife. The court concludes that his lack of reasonable care regarding parenting and appropriate discipline and/or therapeutic help for the children exacerbated the family's difficulties and contributed greatly to the wife's sense of fear and intimidation. While the court viewed the wife's demeanor during her testimony and concludes that her answers to the questions relating to marital conflict were at times somewhat hyperbolic, the court concludes that she was mistreated both verbally, at times physically by the husband since the birth of the children. The court however, makes these findings with only the testimony of the husband and wife to consider. The testimony of the other witnesses shed no real light on the issue of the causes of the breakdown of the marriage. The credibility of the parties and/or witnesses is solely to be determined by the trier of fact. Christie v. Eager, 129 Conn. 62
(1942). CT Page 5833
The court has considered all of the factors in Connecticut General Statutes Sections 46b-56, 46b-59, 46b-81, 46b-82, 46b-83,46b-84 and other pertinent statutes, the tax implications, earning capacity differential and causes for the breakdown of the marriage and consequences of the financial awards set forth below. The court finds it has jurisdiction in this matter, all statutory stays have expired and the facts set out in the complaint are proven true. Judgment shall enter dissolving the marriage of the parties on the grounds of irretrievable breakdown. It is further ordered that:
1. The husband is found to be current in payment of child support and alimony from January 1, 1998 through the date of trial.
2. The court hereby defers its decision concerning custody and parenting plan pursuant to the agreement of the parties executed on 5/7/99 and approved by the court as an interim order as follows:
 Custody and parenting plan deferred. In the interim existing pendente lite orders as to custody and parenting to remain in effect except modified as follows:
 1. During weekend one, Father's Saturday overnight shall be with Sloan and Dara.
 2. During weekend two, Father's Saturday overnight shall be with Kyle and Colton.
 3. Father shall transport children to and from midweek baseball games when he is not working when baseball ends. Father's midweek access per 1/7/989 order resumes. Father shall limit phone calls to one time per day between 9:00 a.m. until 7:00 p. m., during which time he may speak with children. Children can call Father when they wish.
4. Attorney Frank Santy shall be appointed guardian ad litem. Payment for the GAL shall be from tax refund checks which shall be promptly endorsed by both parties and held in escrow by Attorney Diana subject to the CT Page 5834 court's final orders.
 5. Personal property has been divided by agreement and is so ordered.
 6. GAL shall be entitled to testify at any future proceeding in the event an agreement cannot be reached as to custody and parenting.
7. Report back date of 7/9/99, is hereby ordered.
 8. The matter of custody shall be referred to High Conflict division of FRO to mediate resolution of custody parenting with assistance of GAL.
 9. The husband and wife are both ordered to attend meetings as scheduled by Family Relations.
3. The defendant shall pay child support in the sum of $405.00 per week which in accordance with the Child Support Guide Lines. Said sum shall be paid by immediate wage withholding.
4. The husband shall maintain the minor children on his health insurance plan as available through his place of employment. Coverage for each of the minor children shall continue until each child reaches the age of nineteen years old or graduates from high school, whichever shall first occur. The parties shall share equally in the minor childrens' reasonable and necessary unreimbursed and uncovered medical and dental opthomological, orthodontal, psychiatric, psychological and/or therapy expenses and any other health related expenses. The husband shall cooperate with the wife in obtaining coverage through COBRA at her expense and the husband is further ordered to sign any and all documents necessary within the eligibility period at the direction of the wife in order that the wife obtain COBRA medical insurance coverage. Conn. Gen. Stat. Sec. 46b-84d shall constitute a valid authorization to the insurer for a purpose of processing and insurance reimbursement payment to the provider of the medical services. Each parent shall promptly pay to the other any insurance reimbursement for the services of the medical provider paid by him or her. A custodial parent is responsible and shall provide the insurer with a certified copy of the order of dissolution.
5. The husband shall maintain the life insurance policy CT Page 5835 listed on his financial affidavit at Philadelphia Life in the face amount of $100,000.00 for the benefit of the minor children, naming the minor children as primary irrevocable beneficiaries until the youngest child graduates from high school or attains the age of nineteen years, whichever shall occur first. Such coverage shall be reduced by $25,000.00 as each child reaches the age of nineteen years old or graduates from high school, whichever shall first occur. Once that child reaches said date the husband shall be permitted to name a beneficiary other than said child for the $25,000.00 amount of life insurance benefits. Further, the husband shall be barred from encumbering, borrowing or hypothecating the cash value of said insurance policy until the youngest child graduates from high school or attains the age of nineteen years, whichever shall occur first. Further, the husband shall sign each and every document required by Philadelphia Life Insurance so that the wife can obtain annual statements that the policy is in full force and effect. The husband shall further notify the wife immediately if the policy or policies are in danger of lapsing for non-payment of premiums thereon with the wife having the option to pay said premium to keep the insurance in force and seek reimbursement from the husband.
6. The husband shall pay the wife alimony in the amount of $195.00 per week by way of an immediate wage garnishment. Said alimony shall terminate upon first of the occurrence of the following events:
a. Death of the wife;
b. Remarriage of the wife;
c. Cohabitation of the wife by statute; and/or
d. Ten years from the date of this judgement. Further, the husband shall claim the alimony payments as a deduction for IRS and State tax purposes and the wife shall claim the same as income.
7. The husband shall quit claim to the wife all of his right, title and interest in and to the 75 Torry Road, Tolland, Connecticut property. The wife shall indemnify and hold the husband harmless with respect to the balance of the first and second mortgages on said property, real estate taxes, property insurance, maintenance, etc. through the date of transfer. The CT Page 5836 financial affidavits show equity of $66,000 to $62,000 in equity with the husband's family contributing $20,000 for the addition.
8. The husband shall transfer to the wife 20% of the value as of the date of dissolution for each pension, 401K and 401B retirement plan, profit-sharing plan or any other deferred pension plan for which he has an interest, including the New England Teamsters Pension. Said transfer shall be made by a qualified domestic relations order ("QDRO"). Said parties shall cooperate with each other in processing said transfers and are hereby ordered to sign any and all documents necessary to effectuate said QDRO. Plaintiff's attorney shall be responsible for drafting any and all of the documents necessary to provide said transfers with the assistance of the plan administrators. The court will retain continuing jurisdiction to carry out the provisions of this paragraph.
9. The husband shall have all right, title and interest in and to the trailer and personal property remaining in the trailer presently located at the marital residence. The husband shall further have all right, title and interest in and to the 1984 Caprice Classic, the 1978 Grand Prix Pontiac and silver trailer. The wife shall have all right, title and interest in and to the 1989 Chevrolet Suburban and the 1978 Camaro. The parties are hereby ordered to execute any and all documents necessary to effectuate said transfers.
The wife shall have all right, title and interest in and to all of the personal property located in the marital residence other than the personal property set out in Exhibit A to this judgment which shall be the sole property of the husband.
10. The plaintiff shall pay and hold the defendant harmless on the debts listed on her financial affidavit: Fleet Mastercard, Diana Conti Tunila and one half (1/2) Natchaug Hospital balance. The defendant shall pay and hold the plaintiff harmless from any liability on the debts to Tolland Bank Credit Line, Visa, Barrieaus, doctor's bills (family), cable, Gottier Fuel, Attorney Mickelson, CPA, Anderson Auto, one-half (1/2) Natchaug Hospital bill.
11. The husband shall be entitled to claim the parties' minor children for federal tax purposes and state income tax purposes beginning tax year 1999. The parties shall execute any and all documents necessary to effectuate this provision. CT Page 5837
12. The wife shall keep her Fleet checking account and the husband shall keep his Fleet checking account. The husband and wife shall divide the balance of the Fleet joint checking account on an equal basis (50/50).
13. The husband shall pay an allowance to prosecute in the amount of $1,000.00 payable to the counsel for the wife from the balance of the joint income tax return escrow funds after payment of the fees for the counsel for the minor child.
14. The balance of the joint income tax return escrow funds of which is to be held in escrow shall be divided as follows: one (1/2) husband, one-half (1/2) wife.
Devine, J.
 EXHIBIT A PERSONAL PROPERTY OF KEVIN PERZANOWSKI
Glass top rattan dining room table and 4 chairs in attic Reclining chair in basement Stereo cabinet and all records and tapes All stereo equipment 4 x 8 picnic table benches with backs benches without backs All work related papers and miscellaneous All hand tools, ratchet sets, screwdrivers Car tools and ramps to cars Six-foot step ladder Oak triple dresser and oak mirror television One VCR Natchaug fishing picture Two fish end irons in fireplace Yard tools All contents of camping trailer (camping equipment) Camping tent Mountain bike VCR tapes One Sega game machine and all tapes All Estee rockets with miscellaneous equipment Bench in basement wicker seat All fishing, hunting and Bonzi books and materials CT Page 5838 Seiko watch Buck knife Compasses Bow Arrow miscellaneous accessories Rocket building equipment Husband's clothing Family pictures (W to divide 1/2)